# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>284 East Melford Avenue<br>Dayton, Ohio<br>and any and all outbuildings and vehicles found parked at<br>the residence | ) ) ) ) ) ) ) Case No. 3:12mj-033 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Southern____ District of ____Ohio____ *(identify the person or describe property to be searched and give its location):* SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of _____ U.S.C. § _____, and the application is based on these facts: Violations of 21 U.S.C. Sections 841(a)(1) and 846

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

J. MATTHEW ALLEN, SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 1, 2012

*Judge's signature*

City and state: DAYTON, OHIO     MICHAEL R. MERZ, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A



284 E. Melford, Dayton, Ohio is depicted in the photograph above. Further described as a single family home with light colored siding. When facing it from the street, the home has a brick chimney on the right side of the home, and the driveway sits to the left of the home. A detached garage is in the rear of the home. Permission sought to also search all outbuildings and any vehicles parked on the property.

ATTACHMENT "B"

PROPERTY TO BE SEIZED

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios.

F. United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I. Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade.

J. Firearms.

AFFIDAVIT

John M. Allen, a Special Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, hereinafter referred to as "Affiant," being duly sworn, deposes as follows:

INTRODUCTION

1. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878, namely an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. Affiant has been employed as a Special Agent with the DEA since September, 2010. Affiant has been employed in this capacity and worked at the DEA office in Dayton, Ohio since January, 2011. Affiant has been employed by the Kentucky State Police as a Kentucky State Trooper between July, 2005 and September, 2010. Since the time of Affiant's employment with the DEA, Affiant has been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance in drug trafficking investigations of an international scope.

3. Affiant is participating in an investigation conducted by agents of the DEA and other agencies, into the heroin trafficking by individuals in the Dayton, Ohio area and elsewhere. Heroin is a Schedule I controlled substance. Affiant is familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my

1

participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

A. Oral and written reports about this investigation and other investigations which I have received from federal agents and agents from state and local law enforcement agencies;

B. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

C. Telephone records, including toll records and subscriber information;

D. Information developed from cooperating sources, and defendant witnesses;

E. Information developed from the use of Pen Registers and/or trap and trace;

F. Public records, and

G. Court authorized telephone interceptions of Demetris Ward a/k/a "D" a/k/a "Major" ("WARD") and others involved in this investigation by Agents of DEA.

The purpose of this affidavit is to establish probable cause to search the residence, outbuildings, and any vehicles found parked on the property located at 284 E. Melford Avenue, Dayton, Ohio (depicted in Attachment A), and which lies within the Southern District of Ohio. This affidavit does not contain all information known by Affiant regarding WARD and this investigation, but rather that information which is necessary to establish probable cause to search.

**FACTS SUPPORTING PROBABLE CAUSE**

4. On 12/13/11, investigators received court authorization to intercept wire communications over cellular telephone (937) 660-2960. During the authorization to intercept wire communications over the cellular telephone, WARD was intercepted on multiple occasions using the cellular telephone to plan, coordinate, and conduct illegal drug deals. Based on review of the intercepted communications, investigators believe that the majority of the intercepted

2

conversations involved drug transactions taking place in Dayton, OH. On several occasions, WARD spoke with customers in the Dayton, Ohio area in order to coordinate and carry out the sale of heroin in Dayton, Ohio. Several customers called WARD on his cellular telephone expressing their desire to purchase heroin. During their conversations with WARD, customers often stated the quantity of heroin that they wished to purchase and the price they were willing to pay for that heroin. One customer asked WARD if he could get "10 for 80." Another customer wanted to know if she could get "6 for 40." Still another customer inquired of WARD, "What can you do me for 50?" to which WARD responded "6". Investigators know from experience that most personal use heroin customers purchase small amounts of heroin contained in a gel cap, and that each gel cap typically costs about $10. Thus, the above described conversations of "10 for 80" would translate to 10 gel caps of heroin for $80.00, "6 for 40" meant 6 gel caps for $40.00, and the final conversation meant the customer paying $50.00 would receive 6 gel caps in return for his money.

5. Investigators have monitored many intercepted phone calls in which WARD has contacted known sources of supply in Mexico discussing the purchase of heroin. WARD has also been intercepted discussing the purchase of cocaine while waiting his shipment of heroin to arrive in Dayton. WARD has also been intercepted purchasing small amount of heroin from local source of suppliers in the Dayton, Ohio area and in return would cap the heroin and distribute to local customers.

6. On 12/16/2011, your Affiant obtained a search warrant to obtain G.P.S data for cellular telephone (937) 660-2960, the cellular telephone used by WARD and intercepted per court

3

authorization. Investigators tracked the location of the cellular telephone by using the GPS data. Throughout the dates of the search warrant, investigators would receive GPS data accurate to five (5) meters placing the phone near the address of 284 E. Melford, Dayton, Ohio, believed to be presently used by WARD.

7. During the court authorization to intercept wire communications over cellular telephone (937) 660-2960, WARD told customers to contact him when they crossed over certain streets near WARD's residence at 284 E. Melford. When the customers contacted WARD, WARD directed the customers to 284 E. Melford, Dayton, Ohio to finalize the sale of the heroin.

8. On 01/24/2012, Affiant (acting undercover) placed a telephone call to WARD by cellular telephone and requested "8 for 60." WARD told Affiant to come to the residence located off of Main Street and to call when Affiant was close. Affiant placed another phone call to WARD advising WARD that Affiant was on his way to WARD's residence, and advised WARD that Affiant was at Redwood and was not sure where to go. WARD then directed Affiant to WARD's house by telling Affiant a route to follow to 284 E. Melford, Dayton, Ohio. Affiant arrived at 284 E. Melford Street, Dayton, Ohio and met with WARD. WARD invited Affiant inside the home to complete the sale, but Affiant refused to go inside of the residence for safety concerns. WARD became suspicious and asked Affiant to wait outside. WARD entered a vehicle and asked Affiant to follow him. WARD circled the area and pulled up to an intersection. At the intersection, WARD had Affiant pull up next to WARD's vehicle, and WARD handed Affiant a piece of paper containing 8 gel caps of purported heroin, and Affiant handed WARD $60.00 in United States currency. Affiant later conducted a chemical field test on the substance sold by WARD, which came back positive for the presence of heroin.

9. Affiant knows from his training and experience in drug investigations that traffickers often maintain controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates in their residences and other locations from which they conduct their drug trafficking activity. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances. It is also common for these drug traffickers to maintain electronic devices, including but not limited to mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

10. It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

11. Persons engaging in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value. It is common for drug traffickers to purchase items costing over ten thousand dollars. In doing so, traffickers will often violate federal structuring laws (Title 31, United States Code, Section 5324) by obtaining several

5

cashier's checks and/or money orders in small increments from several institutions. Traffickers often utilize agents or "smurfs" to purchase these checks or money orders, and the purchase generates receipts. The proceeds of drug transactions, and evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money gained through engaging in narcotics activities is often found in the trafficker's residences, businesses, automobiles and other locations maintained for the purpose of concealing their activities.

12. Affiant knows that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

13. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

14. Affiant is aware, based on his training and experience, that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived therefrom. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

15. Based upon the information contained in this affidavit, Affiant believes that there is probable cause to believe that WARD has committed violations of the United States Code ("U.S.C"), including but not limited to "Conspiracy to distribute and possess with intent to distribute a controlled substance, namely heroin, a Schedule I controlled substance," in violation of 21 U.S.C. §§ 846 and 841(a)(1); and "Distribution and possession with intent to distribute a controlled substance, namely heroin, a Schedule I controlled substance," in violation of 21 U.S.C. § 841(a)(1).  Further, Affiant believes that the residence located at 284 E. Melford, Dayton, Ohio (described in "Attachment A") contains evidence of these violations (described in "Attachment B").

_____
John M. Allen
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on February 1, 2012.

_____
HONORABLE MICHAEL R. MERZ
UNITED STATES MAGISTRATE JUDGE

7